IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vernon Samuel Brown, #303575, | ) CIVIL ACTION NO. 9:11-0360-RBH-BM |
|        Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Correctional Officer Deangelo Ford, | ) |
|        Defendant. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendant.

Plaintiff filed a motion for summary judgment on April 11, 2011, with a supporting declaration on April 25, 2011. The Defendant thereafter filed his own motion for summary judgment on July 6, 2011, with an additional attachment on July 7, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was issued by the Court on July 8, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff filed a response in opposition to the Defendant's motion on August 5, 2011.

These motions are now before the Court for disposition.[1]



---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Both parties have filed motions for summary judgment. As these motions are dispositive, this Report and Recommendation is entered for review by the Court.

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that on June 1, 2010 he was escorted to his room by the Defendant (a correctional officer) and another officer (Robert Ottaviano). Plaintiff alleges that when he was in his cell, the Defendant entered the cell and grabbed him in a choke hold and threw him on the floor. Plaintiff alleges that the Defendant then got on top of him and struck him twice in the face with his open palm. Plaintiff seeks Ten thousand ($10,000.00) Dollars in damages. See generally, Verified Complaint.

Plaintiff asserts in his summary judgment motion that he has stated a valid constitutional claim for excessive use of force, and has attached an affidavit to his motion wherein Plaintiff reiterates the allegations of his Complaint. Specifically, Plaintiff alleges that on or about June 1, 2010, the Defendant was "cussing me out for no reason, so I cussed back at him." Plaintiff alleges that the Defendant then escorted him to his cell, and that when he arrived at his cell he [Plaintiff] went to his locker to get something to eat. Plaintiff alleges that he then heard the Defendant ask Officer Ottaviano to open the cell door, following which the Defendant "walked in my room and grabbed me from behind in the choke hold and threw me unto the floor and then got on top of me and slapped me twice in the facial area (cheeks)". Plaintiff alleges that he was subsequently seen in medical by Nurse Godwin. See Plaintiff's Declaration.

Plaintiff has also filed a "Declaration Under Penalty of Perjury" from Jonathan Davis, another inmate at the Ridgeland Correctional Institution, where Plaintiff is housed. In this

---

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



Declaration, Davis states that he witnessed the incident between Plaintiff and the Defendant, and that he saw the Defendant grab Plaintiff "in the choke hold and [throw] him unto the floor". Davis further states that the Defendant then "got on top [Plaintiff] and slapped him twice in the facial area". See Davis Declaration.

In support of his motion for summary judgment, the Defendant Ford has submitted an affidavit from Ann Hallman, who attests that she is employed by the SCDC as Inmate Grievance Administrator. Hallman attests that the SCDC has an inmate grievance system through which inmates may seek review of complaints relating to disciplinary hearing appeals, classification appeals, policy/procedures, directives, or conditions which directly affect an inmate. Hallman attests that, pursuant to this system, an inmate should first attempt to informally resolve a complaint, following which (if unsuccessful) the inmate must complete and submit a Step 1 Grievance form. If the inmate is dissatisfied with the decision on his Step 1 Grievance, he can then file and submit a Step 2 Grievance form. Finally, if the inmate is dissatisfied with the decision on his Step 2 Grievance, he may file for administrative review by the South Carolina Administrative Law Court (ALC). Hallman attests that, with respect to the incident at issue in this lawsuit, Plaintiff completed the grievance process through the Step 2 Grievance procedure, but did not appeal the denial of his Step 2 Grievance to the Administrative Law Court. See generally, Hallman Affidavit, with attached Exhibits A and B (Step 1 and Step 2 Grievance Forms).

The Defendant has also submitted an affidavit from Robert Ottaviano, who attests that he is a correctional officer at the Ridgeland Correctional Institution. Ottaviano attests that on June 1, 2010, at approximately 5:30 p.m., he observed the Defendant escorting Plaintiff back to his dorm. Ottaviano attests that, while in his cell, Plaintiff said he was going to kill himself and everyone



around him. Ottaviano attests that he then opened Plaintiff's cell door to counsel the Plaintiff and to search for any weapons in the cell, and at which time Plaintiff "took a step towards Officer Ford and me." Ottaviano attests that the Defendant Ford then "took the Plaintiff to the floor using a straight arm bar takedown defensive tactical maneuver", and that when Plaintiff continued to struggle and resist, the Defendant administered two open-hand palm/heel strikes to Plaintiff's cheeks and ordered him to "settle down." Ottaviano attests that Plaintiff repeated that he was going to kill himself, so he (Ottaviano) secured Plaintiff in his cell and notified his supervisor and medical. See generally, Ottaviano Affidavit. [3]

The Defendant Deangelo Ford has also submitted an affidavit, wherein he attests that he is a correctional officer at the Ridgeland Correctional Institution. Ford attests that on June 1, 2010 at approximately 2:00 p.m., he observed Plaintiff walking in front of the Beaufort Unit and asked him why he was on the yard. Ford attests that Plaintiff cursed at him, and that when Plaintiff could not produce a pass, he twice ordered Plaintiff to return to his dorm. Ford attests that Plaintiff refused, again cursing at him and stating: "I should shank you with this in my pocket." Ford attests that he frisk searched the Plaintiff, but did not find any weapons or contraband, although Plaintiff again stated "I am going to shank you." Ford attests that he escorted Plaintiff to the holding cell and prepared an incident report regarding this matter, a copy of which is attached to his affidavit as Exhibit A.

Ford attests that later that day, at approximately 5:30 p.m., he was supervising the

---

[3] Ottaviano states in his affidavit that an Incident Report he prepared regarding this matter is attached to his affidavit as Exhibit A. However, there is no attachment to Ottaviano's affidavit filed with the Court.



release of the inmates in Savannah Unit to the cafeteria for the evening meal when he observed Plaintiff walking on the grass and with his shirt out of his pants. Ford attests that he ordered Plaintiff to walk on the sidewalk and tuck in his shirt, but that Plaintiff ignored his orders and said in a low tone of voice "I should have had my shank." Ford attests that he then, with the assistance of Ottaviano, escorted Plaintiff back to his cell and placed him on cell restriction. Ford attests that, while in the cell, Plaintiff said he was going to kill himself and shank Ford when he got off cell restriction. Ford attests that Ottaviano opened the cell door to counsel the Plaintiff and to search for any weapons in the cell, at which time Plaintiff walked towards the officers "in a threatening manner with his hands balled into fists, stating, "What did I tell you!". Ford attests that he then subdued the Plaintiff by taking him to the floor using a straight arm bar take down defensive tactical maneuver, but that once on the floor Plaintiff continued to resist and attempted to kick Ford. Ford attests that he ordered Plaintiff to stop, and that when Plaintiff continued his aggressive actions, he "administered two open-hand palm/heel strikes to the Plaintiff's cheeks to stun him." Ford attests that Plaintiff then ceased his actions and was secured in his cell.

Ford attests that he used the minimum amount of force necessary to maintain control of the Plaintiff and restore order. He also notified "Capt. Ancrum" of the incident, and Capt. Ancrum escorted Plaintiff to the medical unit where he was seen by Nurse Joan Godwin. Ford attests that Godwin evaluated and treated Plaintiff, and that after determining that he was not a suicide risk, Plaintiff was placed back on cell restriction. Ford has attached a copy of an Incident Report and a Report on the Use of Force regarding this matter as Exhibits B and C to his affidavit. See generally, FordAffidavit, with attached Exhibits.



**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

**I.**

Defendant first asserts that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." However, it is the Defendant who has the



burden of showing that a Plaintiff failed to exhaust his administrative remedies; see Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; and after review of the materials submitted the undersigned finds that the Defendant is not entitled to dismissal of this case on this ground at this time.

Defendant concedes that the Plaintiff completed the prison grievance process through the Step 2 level at the institution. Defendant argues, however, that because Plaintiff did not then file an appeal of the denial of his Step 2 grievance to the State Administrative Law Court, Plaintiff failed to exhaust his remedies. However, Plaintiff was not required to appeal the denial of his Step 2 grievance to the Administrative Law Court in order to exhaust his administrative remedies for purposes of this lawsuit, as conditions of confinement claims, such as is being asserted here, do not require exhaustion past the Step 2 institutional level. See Johnson v. Ozmint, 567 F.Supp. 2d 806, 820, n.5 (D.S.C. 2008); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007).[4] Therefore, the Defendant is not entitled

---

[4] If, however, a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official, he or she must exhaust both steps of the prison grievance process and also appeal the Step 2 decision to the state ALJ Division before his remedies may be said to be exhausted. See SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35 (S.C. 2007); see also Dicks v. South Carolina Dep't of Corr., No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). Cf. Braden v. 30th Judicial Circuit Ct., 410 U.S. 484, 490-91 (1973). Plaintiff is not challenging a disciplinary



to summary judgment in this case on this ground.

## II.

Turning to the merits of Plaintiff's claim, as an employee of the Department of Corrections, the Defendant is subject to suit for damages under § 1983 in his individual capacity. However, although subject to suit, Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether the Defendant violated his constitutional rights.

When reviewing a claim of constitutionally excessive force, the Court should consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers, 475 U.S. 312, 321 (1986); Majette v. GEO Group, Inc., No. 07-591, 2010 WL 3743364, at * 6 (E.D.Va. Sept 22, 2010); see Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]. Here, the evidence (considered in the light most favorable to the Plaintiff) shows that Plaintiff and the Defendant had been engaged in a verbal confrontation (Plaintiff himself concedes that the two were "cussing" at each other). According to the Plaintiff, Ford then came into his cell (which, according to the Plaintiff, was after the two had stopped cursing at each other), put him in a choke hold and threw him on the floor, and then slapped him twice in the facial area.

While these facts (considered in the light most favorable to the Plaintiff) show that force was used against the Plaintiff, they are not sufficient to give rise to a genuine issue of fact as

conviction in this case.



to whether *constitutionally* excessive force was used in this instance. Considering the Whitley factors, Plaintiff himself concedes that he was being unruly, that he had been cursing at the Defendant, and that the force used against him essentially consisted of Plaintiff being slapped twice in the face by the Defendant with an open palm. The fact that Plaintiff concedes that he was being confrontational justifies a reasonable perception on the part of the prison guards that the situation could get out of hand,[5] and the fact that some amount of force was used in order to calm the situation does not by itself rise to the level of a constitutional violation. In order to avoid summary judgment, the evidence must be sufficient to create a genuine issue of fact as to whether the amount of force used was constitutionally *excessive*, and in light of the minimal amount of force alleged, and the fact that there is no evidence of Plaintiff being struck or hit once he was subdued, the undersigned does not find that a genuine issue of fact exists as to whether a *constitutionally excessive* amount of force was used. Cf. Wilson v. Flynn, 429 F.3d 465, 469 (4th Cir. 2005)[Lack of evidence that officers used any improper force after restraining a prisoner "distinguishes [Plaintiff's] case from many in which we have held the Plaintiff has alleged an excessive force claim."]; Williams, 77 F.3d at 761 [because prison officials are entitled to use appropriate force to quell prison disturbances, and because these officials oftentimes must act under pressure without the luxury of a second chance, in order for a

---

[5] Indeed, Plaintiff was charged with and convicted of threatening behavior. See Exhibit B to Hallman Affidavit [Noting that Plaintiff was formally charged and convicted of threatening an employee for this incident]. Hence, although the finding in Heck v. Humphrey, 512 U.S. 477 (1994), does not bar Plaintiff from proceeding on his excessive force claim, the Court cannot assume Plaintiff's factual allegations that he was not causing a disturbance to be true for purposes of summary judgment to the extent those allegations, if proven, would undermine the validity of his conviction. Cf. Dyer v. Lee, 488 F.3d 876, 881-882 (11th Cir. 2007); see also Christy v. Sheriff of Palm Beach County, Fla., 288 Fed. Appx. 658, 666 (11th Cir. 2008); Baxter v. Crawford, 233 Fed. Appx. 912, 916 (11th Cir. 2007).



prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm]; see also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; cf. Bell v. Wolfish, 441 U.S. 520, 540 (1979) ["[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action"].

    This finding is further bolstered by the fact that there is no evidence whatsoever to show that Plaintiff received any injuries as a result of this incident. The evidence reflects that Plaintiff was seen by medical following this incident and was returned to his cell, and neither the Incident Report nor the Report on Use of Force provided as exhibits by the Defendant reflect that Plaintiff incurred any injuries. Nor has Plaintiff submitted any evidence (such as medical reports or exhibits, affidavits of the treating nurse, etc.) to show that he incurred any injury as a result of this confrontation. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical and mental injury is inadequate to survive a motion for summary judgment]; Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)]. Although it is not required that Plaintiff show he suffered more than a de minimis injury to maintain an excessive force claim; see Wilkins v. Gaddy, 130 S.Ct. 1175, 1179-1180 (2010)[Noting that the notion that significant injury as a threshold requirement for stating an excessive force claim was rejected in Hudson, 503 U.S. at

10



7]; the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. Wilkins, 130 S.Ct. at 1179-1180 [holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim"], citing to Hudson, 503 U.S. at 9 (quoting Johnson, 481 F.2d at 1033); see also Ellerbe v. Roach, No. 08-3118, 2010 WL 3361703, at * 3 (E.D.N.C. Aug 24, 2010). As noted, Plaintiff has failed to produce any evidence showing a discernible injury in this case.

Therefore, while Plaintiff may conceivably have a state law claim arising from this incident, or some further administrative remedy he can pursue, the evidence before this Court is not sufficient to create a genuine issue of fact as to whether constitutionally excessive force was used under the circumstances in this case. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. Hence, Plaintiff's excessive force claim asserted as a constitutional violation should be dismissed.

**Conclusion**

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed.**

11



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 17, 2011
Charleston, South Carolina



12

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

